**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TA-JUANA ARRINGTON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **06 C 5129** |
| | ) | |
| **LA RABIDA CHILDREN'S HOSPITAL,** | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Ta-Juana Arrington, who is African-American, sued her former employer, La Rabida Children's Hospital, alleging that La Rabida subjected her to sexual harassment (Count I), created a hostile work environment (Count II), retaliated against her (Count III), slandered her (Count IV), is liable for intentional infliction of emotional distress (Count V), and made fraudulent representations about her (Count VI). La Rabida's motion for summary judgment is before the court. For the following reasons, Count VI is dismissed with prejudice as Ms. Arrington concedes that it cannot be sustained, and La Rabida's motion for summary judgment as to the remaining counts is granted.

**I. Background**

**A. Local Rule 56.1**

Under Local Rule 56.1, a party seeking summary judgment must submit a statement of material facts, consisting of short numbered paragraphs accompanied by citations to admissible evidence. Loc. R. 56.1(a). The opposing party must admit or deny each paragraph and cite to supporting evidence. Loc. R. 56.1(b)(3)(A). Failure to include "specific references to the affidavits, parts of the record, and other supporting materials relied upon" in support of a denial may cause the movant's facts to be deemed admitted to the extent that they are supported by the

record.  *See id.*; *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997); *Waldridge v. Am.*
*Hoechst Corp.,* 24 F.3d 918, 924 (7th Cir. 1994).

Many of Ms. Arrington's responses take issue with La Rabida's facts but the alleged
disputes are, at best, semantic quibbling.  Ms. Arrington also suggests that the testimony cited in
support of certain of La Rabida's facts lacks foundation.  For example, she contends that Nancy
Ramski, La Rabida's human resources manager, lacks foundation to testify about human
resources issues that are within the scope of her job responsibilities and are based on her own
personal knowledge.  *See, e.g.*, Plaintiff's Response to La Rabida's Statement of Facts at ¶¶ 50-
51.  However, Ms. Arrington does not direct the court's attention to any portions of the record
supporting her denial or any authority suggesting that Ms. Ramki's testimony is improper.  It is
not:  Ms. Ramski may properly testify directly regarding matters within her personal knowledge
that do not rely on information from third-party declarants.  *See* Fed. R. Evid. 801(c).

In addition, many of Ms. Arrington's responses simply fail to match up with La Rabida's
statements of fact and corresponding evidence.  For example, La Rabida points to an affidavit
from La Rabida's human resources director providing details about discipline imposed on Ms.
Usher (one of Ms. Arrington's co-workers) after an argument between Ms. Arrington and Ms.
Usher.  La Rabida's Statement of Facts at ¶ 15.  Ms. Arrington's response states that disciplinary
records do not fall into a hearsay exception and that Ms. Usher did not admit that she was
disciplined.  However, the human resource director's affidavit states that she is in charge of the
human resources department at La Rabida, has access to all of the files maintained by that
department, and that the department maintains personnel files in the regular course of business.
*See* Fed. R. Evid. 803(6).  Thus, Ms. Arrington's objection is not well-founded.  Moreover, Ms.
Arrington does not provide any evidentiary support for her contention that Ms. Usher did not

admit that she was disciplined. In any event, whether Ms. Usher admitted that she was disciplined is irrelevant, as whether she admits it or not, she either was or was not disciplined.

Regrettably, these types of responses are far from an isolated incident and caused the court to spend a considerable amount of time attempting to straighten out the Rule 56.1 statements. The court also stresses that attempts by a party opposing summary judgment to create a messy record do not enhance that party's chances of creating a fact question requiring a trial. Instead, they simply lead to delay in resolving the summary judgment motion before the court.

With that said, as noted above, improper denials mean that the movant's facts are deemed admitted to the extent that they are supported by the record. Loc. R. 56.1(b)(3)(A). Thus, to the extent that Ms. Arrington has not provided citations to any evidence supporting her denials, or has relied on inapplicable objections, La Rabida's corresponding facts – all of which are supported by the record – are deemed admitted. With this understanding, the following facts are derived from the parties' Local Rule 56.1 statements.

### B. Facts

La Rabida hired Ms. Arrington, who is African-American, in October of 2002. While the parties do not agree on every detail, the record shows that Ms. Arrington was involved in a steady stream of conflicts in the workplace.

### 1. Supply Technician Discord

Ms. Arrington worked as a supply technician and from the start, was involved in conflicts with her fellow supply technicians, including Carol Usher (who is African-Belizean) and Charlene Brooks (who is African-American). In March of 2003, Ms. Usher yelled at Ms. Arrington when she disagreed with actions taken by Ms. Arrington during her workday.

According to Ms. Arrington, during the argument, Ms. Usher said, "You should have kept your damn hands off of it [the IV tray]. I don't need you doing anything for me . . . . I'm so sick of you goddamned people, you all come over here and trying to run things and do things your all kind of way . . . bitch, you get on [sic] my [expletive deleted] nerve." Arrington Dep. at 87:12-13 & 17-21.

Linda Herd, Ms. Arrington's immediate supervisor in the special processing department, was not at work that day. However, Irma Ross, the supervisor of La Rabida's laboratory, overheard the argument and reported it to Ronald Peckham, the manager of La Rabida's special processing department. La Rabida's records show that Ms. Usher was promptly disciplined for using discriminatory and abusive language that violated La Rabida's employment policies.

Ms. Arrington was not pleased with the follow-up after the argument and claims (with no evidentiary support, and despite the records showing that Ms. Usher was disciplined) that Ms. Usher was not disciplined. She also contends that Ms. Brooks, Ms. Usher, and Ms. Herd were all friends and that Ms. Usher "slandered" her repeatedly.

Later in 2003, Ms. Arrington complained to Nancy Ramski (now Nancy Agajeenian), the human resources director at the time, about the infighting among the supply technicians. In response, Ms. Ramski held a meeting of all of the special processing department employees. La Rabida's Chief Financial Officer attended and advised the employees that La Rabida had a zero tolerance policy for the kind of behavior that had led to the meeting. La Rabida also brought in an outside facilitator who conducted training sessions to help the employees communicate and get along better.

Nevertheless, in October of 2003, Ms. Brooks threatened Ms. Arrington with physical violence and used insulting and derogatory language towards her. In response, La Rabida discharged Ms. Brooks.

### 2. Alleged Shunning Led By Mark Gates

Subsequently, Ms. Arrington felt that she was being shunned after Mark Gates, an African-American employee who worked in a different department, told other La Rabida employees to leave Ms. Arrington alone because she gets people fired. Ms. Arrington contends that La Rabida failed to investigate this incident adequately, but the record shows that Ms. Arrington was told that Mr. Gates would be sent to an employee assistance program and La Rabida in fact sent him for counseling. Ms. Arrington asserts that Ms. Usher also made negative comments to upset her and convince other employees to shun her, but she does not point to evidence showing that she complained about Ms. Usher's comments to her supervisors.

### 3. Complaints About Kenneth Ramsey

La Rabida hired Kenneth Ramsey, who is African-American, to fill Ms. Brook's former position. According to Ms. Arrington, in early March of 2004, she told her co-worker, Cathy Coleman, that Mr. Ramsey had grabbed her breast and pulled apart the snap on her smock. Ms. Usher, who had been promoted to the position of lead worker in the special processing department, was not working on the day of the alleged breast grab.[1]

---

[1] La Rabida's statement of facts, at ¶ 23, points to evidence in the record demonstrating that Ms. Usher did not supervise Ms. Arrington or anyone else either before or after her promotion to lead worker. First, according to Ms. Usher's own affidavit, after her promotion, she "perform[ed] the duties of a supply technician and also schedule[d] supply technicians and train[ed] new employees. I do not and cannot hire, fire, demote, promote, transfer or discipline employees." Usher Dec. at ¶ 4. Second, Ms. Ramki stated under oath that the position of lead supply technician "did not supervise any positions and did not hire, fire, demote, promote, transfer or discipline employees." Ramski Dec. at ¶ 4. This is supported by the job description for the

The following weekend, Ms. Arrington told Ms. Usher that she was having conflicts with Mr. Ramsey and wanted to meet with their supervisor, Ronald Peckham. Mr. Peckham and Ms. Usher met with Ms. Arrington the following Monday, and Mr. Peckham told Ms. Arrington to immediately file a complaint of sexual harassment with Nancy Ramski, La Rabida's director of human resources, pursuant to La Rabida's anti-harassment policy. Ms. Arrington left the meeting and went directly to Ms. Ramki's office.

Ms. Ramski spoke with her, asked her to prepare a written statement, and then investigated by speaking with Mr. Ramsey, Ms. Usher, Daphne Fraiser (another special processing department worker), Mr. Peckham, and his boss, Fred Saviano. Mr. Ramsey denied any inappropriate touching and no witnesses saw the alleged breast grab. However, Ms. Ramski's affivavit stated that she discovered that Ms. Arrington and Mr. Ramsey "had engaged in consensual sexual conversations at work," so she "admonished them both to refrain from inappropriate discussions/behavior of [a] sexual nature in their department." Dft's Ex. E at ¶ 6.

_____

position of lead supply technician, which states "POSITIONS SUPERVISED: None." *Id*. at Ex. 1. Third, the current director of La Rabida's human resources department, Frances Lefkow, stated under oath that, "[t]he position of Lead Supply Technician at La Rabida does not supervise any positions . . . . That position does not hire, fire, demote, promote, transfer or discipline employees." Lefkow Dec. at ¶ 12. In response to this statement of fact, Ms. Arrington asserts, without elaboration, that all of these statements are hearsay. Pltf. Response to Dft. Facts ¶ 23. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). However, statements made in a declaration that are within the declarant's personal knowledge are properly before the court when ruling on a motion for summary judgment. *Keri v. Board of Trustees of Purdue University*. 458 F.3d 620, 631 (7th Cir. 2006). Moreover, the job description for the position of lead supply technician appears to easily fall within the business record exception to the rule against hearsay. *See* Ramski Dec. at ¶¶ 1, 3-4. Fed. R. Evid. 803(6). Because Ms. Arrington has failed to establish that all of the evidence cited by La Rabida falls within the ambit of the hearsay rule and has not otherwise responded to ¶ 23 of La Rabida's statement of facts, it is deemed admitted.

She also warned Mr. Ramsey "that any future allegations against him could result in discipline up to and including his discharge" and instructed Ms. Arrington "orally and in writing to tell [her] if [Mr.] Ramsey or any other employee engaged in any further conduct that made her uncomfortable." *Id.*[2] Ms. Arrington was dissatisfied with the results of the investigation because Ms. Ramski interviewed non-witnesses. Ms. Arrington also disagreed with La Rabida's position that it was appropriate to interview others to determine if they might have witnessed or experienced sexual harassment involving Mr. Ramsey.

Ms. Ramksi followed up by sending memoranda to both Mr. Ramsey and Ms. Arrington which, respectively, warned Mr. Ramsey about the consequences of any inappropriate behavior. She also told Ms. Arrington to advise her or any other manager if any further behavior in the workplace made her feel uncomfortable.[3] Ms. Arrington acknowledged that she was aware that

---

[2] This is consistent with La Rabida's sexual harassment policy, which provides:

> If you experience or witness sexual or other unlawful harassment in the workplace, feel free to tell the offender that the behavior is unwelcome and to stop it immediately. You should also advise your supervisor or other appropriate management representative of the incident. If you believe that discussing the situation with your supervisor would be futile, or it was ineffective, or if you desire counsel, or if you do not feel comfortable addressing the situation directly, you should promptly report the incidents to the department director/manager or the Director of Human Relations. You can raise concerns and make reports without fear of reprisal or retaliation.

[3] Ms. Arrington asserts that she told Ms. Ramski about alleged further instances of harassment in impromptu meetings in the La Rabida hallway, stairwell, parking lot, or canteen. However, her statement of facts regarding these alleged meetings does not contain sufficient details to provide a foundation for these conversations. Pltf. Statement of Facts at ¶ 32. *See Avdyli v. Barnhart*, No. 05 C 2132, 2007 WL 57601, at *2 (N.D. Ill. Jan. 3, 2007) ("a proper foundation for a conversation must include information as to when and where the conversation occurred, who was present, and who said what to whom"). Thus, the court will not consider the purported casual meetings when ruling on La Rabida's motion for summary judgment.

she could go directly to Ms. Ramski "even though other employees with a title" might tell her "to go through the chain of command." Pltf. Dep. at 254:13-16.[4] Ms. Arrington contends that Mr. Ramsey continued to engage in inappropriate behavior.[5] However, it is undisputed that Ms. Arrington did not file another written complaint with La Rabida complaining about alleged sexual harassment.[6]

### 4. Events Following Ms. Arrington's Complaint About Mr. Ramsey

In May of 2004, shortly after her complaint about Mr. Ramsey, Ms. Arrington received her regularly scheduled pay increase. In the summer of 2004, Ms. Arrington took a month-long leave of absence due to health problems. In November of 2004, she received a rating of "meeting expectations" and a merit increase in her hourly compensation.

### 5. Beatrice McIntosh Incident

In December of 2004, Ms. Arrington had a confrontation at work with fellow employee Beatrice McIntosh. On December 28, 2004, La Rabida disciplined Ms. Arrington due to a report

---

[4] In this regard, Ms. Arrington testified that she spoke to Ms. Ramski again but did not identify the time or content of these alleged conversations. Arrington Dep. at 219:16-220:2. She also testified that Ms. Usher and Mr. Peckham told her not to complain to Ms. Ramski and instead to keep any issues inside the department. *Id*. at 220:11-222:8.

[5] Ms. Arrington asserts that Mr. Ramsey exposed himself on several occasions. She testified that she reported these incidents to Ms. Usher, who was not a supervisor, *see* supra at n. 1, and "Lewis Sally," who appears to be Lula Sally, a lead worker in the environmental services department who cannot hire, fire, demote, promote, transfer, or discipline employees. Supplemental Affidavit of Frances Lefkow at ¶ 4.

[6] Ms. Arrington has provided consistently inconsistent descriptions of the timing of this alleged harassment: Ms. Arrington testified at her deposition that the harassment continued unabated immediately after the meeting with Ms. Ramski (Pltfs. Facts ¶ 29) and that after the meeting, Mr. Ramsey began to harass her again in February of 2005 (Response to Dft. Fact ¶ 42), began to harass her again after September of 2004 (Arrington Dep. at 186:7-8), and also began to harass her again a "couple of months" after the meeting (CCHR Complaint ¶ 9).

that during this incident, Ms. Arrington stated, "if she [Ms. McIntosh] mess around she get her butt whooped." Ms. Arrington denies that she made this statement.

### 6. La Rabida's RIF

In February of 2005, La Rabida implemented a partial reduction in force ("RIF"), which required the elimination of at least seven full time positions. The RIF called for one supply technician position to be reduced from full-time to half-time based on performance evaluations of all of the supply technicians by department manager Fred Saviano. The supply technicians were Mr. Ramsey, Ms. Arrington, and Daphne Fraiser, all of whom are African-American.[7] The supply technicians received ratings of 11.4 (Mr. Ramsey), 7.4 (Ms. Arrington), and 9.1 (Ms. Frazer). La Rabida asserts that it selected Ms. Arrington for the half-time position based on the ratings.

### 7. Ms. Arrington's Discharge

In July of 2005, La Rabida discharged Mr. Ramsey for lying on his job application and Ms. Arrington applied for his full-time job. Ms. Arrington contends that she heard through the grapevine that her application was doomed because La Rabida thought she was incompetent. Specifically, according to Ms. Arrington, Delois Wooten (a La Rabida employee) told her that Monet Wafer (a security guard) overheard Ms. Usher tell an unspecified employee that Ms. Arrington would never get the position because she was incompetent and lazy. As noted by La

---

[7] The corresponding statement of facts submitted by La Rabida is supported by Ms. Ramski's affidavit. As she frequently does in her response to La Rabida's facts, Ms. Arrington asserts, without explanation, that this testimony is not supported by the personal knowledge of the affiant (in the singular). *See* Response to Dfts. Facts at ¶ 53. First, this objection is mystifying given that the face of the affidavits indicates that the affiants are testifying about matters within their personal knowledge. Second, Ms. Arrington did not object to a different portion of La Rabida's statement of facts based on the exact same evidence. *See id.* at ¶ 52. In any event, because La Rabida's evidence is supported by a proper foundation, Ms. Arrington's objection is overruled.

Rabida, this is inadmissible triple hearsay, but the court nevertheless includes it in the fact statement because it provides background – albeit in an inadmissible way – for the rather convoluted events that followed.

Ms. Arrington confronted Ms. Usher, the alleged source of the rumor, who then confronted Ms. Wafer. In turn, Ms. Wafer complained to Human Resources that Ms. Arrington was attributing false statements to her. Ms. Ramski investigated Ms. Wafer's complaint and admonished Ms. Arrington that the complaint and investigation should not be discussed with anyone else. La Rabida employee Delois Wooten, who is African-American, then went to Human Resources and told Ms. Ramski that Ms. Arrington had told her about the Wafer investigation.

The human resources department followed up by interviewing witnesses to the alleged conversation between Ms. Wooten and Ms. Arrington about the Wafer investigation. Ms. Wooten told them that Ms. Arrington had approached her to talk about that situation and that Ms. Arrington had then lied and denied that she had done so. Ms. Arrington denied that she had approached Ms. Wooten, and said that Ms. Wooten had approached her and unsuccessfully tried to get her to talk about the Wafer investigation. Ms. Arrington disputes the truth of Ms. Wooten's report to human resources, but does not deny that Ms. Wooten told human resources that Ms. Arrington had approached her and told her about the Wafer investigation.

After talking to involved parties, La Rabida concluded that Ms. Wooten's report was credible and that Ms. Arrington had compromised the confidentiality of the investigation. Jennifer Chandler, LaRabida's Director of Nursing Services (who is also African-American) thus terminated Ms. Arrington for violating hospital directions and compromising the confidentiality of La Rabida's investigation.

## 8.    Ms. Arrington's EEOC Charge and Federal Lawsuit

On September 23, 2005, Ms. Arrington filed a charge against La Rabida with the EEOC alleging sex discrimination and retaliation.  On December 22, 2005, she amended her charge to add allegations of race and national origin discrimination.  She then received a right to sue letter and filed a complaint in federal court on September 21, 2006, alleging harassment on the basis of sex and retaliation.  On January 25, 2007, she amended her complaint to add a hostile work environment count and state law claims of defamation, intentional infliction of emotional distress, and fraudulent misrepresentation.  On January 15, 2008, after being given leave to do so, she corrected her amended complaint by substituting a reference to "42 U.S.C. § 1981(a) and (b)" for a prior reference to 42 U.S.C. § 1981a.

## II.    Discussion

### A.    Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party.  *Valenti v. Qualex, Inc.*, 970 F.2d at 365;  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a "genuine" material fact exists; that is, the evidence is such that a

reasonable jury could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 322.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears*, *Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### A.    Sexual Harassment (Count I)

Ms. Arrington contends that Mr. Ramsey, a fellow supply technician who was hired to fill Carol Brook's position after her termination, sexually harassed her and that La Rabida knew about the harassment and failed to do anything about it. In response, La Rabida first contends that portions of this claim are time-barred because Ms. Arrington's 2004 complaints about Mr. Ramsey occurred more than 300 days before she filed her EEOC charge and the misbehavior stopped for at least a year. The court will not analyze Ms. Arrington's contradictory statements about the timing of the alleged resumption of harassment by Mr. Ramsey because even if all of his alleged conduct is timely and before the court, La Rabida's alternate argument – that it satisfied its legal duty in addressing co-worker harassment – disposes of Ms. Arrington's Title VII sexual harassment claim.

Specifically, La Rabida correctly notes that it may raise an affirmative defense to a claim of harassment under Title VII by showing that it "exercised reasonable care to prevent and

correct promptly any sexually harassing behavior" and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998). This means that when a plaintiff claims that a co-worker harassed her, an employer can be liable only if it was negligent either in discovering or remedying the harassment. *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 952-53 (7th Cir. 2005).

An employer satisfies its legal duty in co-worker harassment cases if it takes reasonable steps to discover and address incidences of co-worker harassment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). Moreover, notice or knowledge by the employer of harassment is a prerequisite for liability. *Id*. at 1035. Thus, "a plaintiff cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1018 (7th Cir. 1996).

To put her employer on notice, an employee must make a reasonable effort to report the harassment to someone who can do something about it. *See Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 770 (7th Cir. 2007). Moreover, when "an employer sets up a point person to accept complaints, this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case." *Bombaci v. Journal Community Pub. Group, Inc.*, 482 F.3d 979, 984 (7th Cir. 2007) (internal quotations and citations omitted). If the employer fails to establish a point person or that individual is not "easily accessible, an employer can receive notice of harassment from a department head or

someone that the complainant reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment." *Id.* (internal quotations and citations omitted).

Here, Ms. Arrington reported the first incident with Mr. Ramsey (the alleged breast grab) to Ms. Usher and their supervisor, Ronald Peckham. Mr. Peckham and Ms. Usher talked with Ms. Arrington and Mr. Peckham told Ms. Arrington to immediately file a complaint of sexual harassment with Nancy Ramski, La Rabida's director of human resources, pursuant to La Rabida's anti-harassment policy. Ms. Arrington did so, and after an investigation, Ms. Ramski warned Mr. Ramsey orally and in writing that any additional allegations against him could result in discipline up to and including his discharge. She also told Ms. Arrington orally and in writing to let her know if Mr. Ramsey or any other employee engaged in any further conduct in the workplace that made her uncomfortable.[8]

Although Ms. Arrington contends that the harassment continued, she has not pointed to any admissible evidence indicating that she came to Ms. Ramski with additional complaints after her first complaint about the breast grabbing incident. Moreover, although Ms. Arrington alleges that Ms. Usher and Mr. Peckham told her not to complain to Ms. Ramski and instead to keep any issues inside the department, she also admits that she was aware that she could go directly to Ms. Ramski "even though other employees with a title" might tell her "to go through the chain of command." Arrington Dep. at 220:11-222:8, 254:13-16.

---

[8] The court acknowledges that Ms. Arrington's response memorandum asserts that she reported harassment to Ms. Ramski, "who did nothing." Pltf's Response at 10. It is undisputed that Ms. Arrington formally reported harassment (the breast grabbing incident) once to Ms. Ramski. Her statement that she reported harassment but La Rabida "did nothing" appears to reflect Ms. Arrington's dissatisfaction with Ms. Ramski's investigation of the breast grabbing incident and Ms. Ramski's warning to Mr. Ramsey, as opposed to being a literally true statement.

Thus, Ms. Arrington knew that she could complain to Ms. Ramski regardless of what anyone else might tell her, but did not do so. Moreover, no evidence in the record indicates that Ms. Ramski was unavailable. Indeed, ample evidence shows that she was willing to listen to any complaints lodged by Ms. Arrington and that Ms. Arrington saw Ms. Ramski frequently in Ms. Arrington's work area, as well as La Rabida's halls, restroom, parking lot, canteen, and lunchroom. Ms. Arrington thus failed to place La Rabida on notice of the allegedly continuing harassment. *See Bombaci v. Journal Community Pub. Group, Inc.*, 482 F.3d at 984-85.

Ms. Arrington's argument that she reported the harassment by complaining to Ms. Usher does not affect this conclusion. If the point person appointed by an employer is unavailable, an employee may complain to a department head or someone that she "reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment." *Id.* (internal quotations and citations omitted). First, Ms. Ramski, the designated point person, was available.

Second, Ms. Arrington asserts that she thought that Ms. Usher was the point person because Ms. Usher told her to obey the "chain of command" and not complain to anyone outside their department. This is inconsistent with uncontested evidence showing that Ms. Ramski told Ms. Arrington and others that she was the designated point person. Moreover, Ms. Arrington also knew that she could go directly to Ms. Ramski "even though other employees with a title" might tell her "to go through the chain of command." Arrington Dep. at 220:11-222:8, 254:13-16.

In any event, the record does not show that Ms. Arrington's alleged belief that she thought that Ms. Usher was a supervisor or "was someone whose duties required her to forward sexual harassment complaints to higher management" was reasonable. *See Bombaci v. Journal Community Pub. Group, Inc.*, 482 F.3d at 984. Ms. Usher was a lead technician, not a

-15-

supervisor, and as discussed above, Ms. Arrington failed to properly deny ¶ 23 of La Rabida's statement of facts indicating that Ms. Usher did not supervise Ms. Arrington or anyone else. Thus, the court finds that Ms. Arrington's complaints about Mr. Ramsey to Ms. Usher did not place La Rabida on notice of the alleged ongoing harassment.

The court is similarly unpersuaded by Ms. Arrington's claim that she followed La Rabida's sexual harassment policy and thus placed La Rabida on notice. That policy states:

> If you experience or witness sexual or other unlawful harassment in the workplace, feel free to tell the offender that the behavior is unwelcome and to stop it immediately. You should also advise your supervisor or other appropriate management representative of the incident. If you believe that discussing the situation with your supervisor would be futile, or it was ineffective, or if you desire counsel, or if you do not feel comfortable addressing the situation directly, you should promptly report the incidents to the department director/manager or the Director of Human Relations. You can raise concerns and make reports without fear of reprisal or retaliation.

According to Ms. Arrington, her complaints to Ms. Usher put La Rabida on notice. The court disagrees. Ms. Usher did not supervise Ms. Arrington and no evidence indicates that she could reasonably be viewed as an "appropriate management representative." Moreover, under the policy, even if Ms. Arrington thought that reporting further incidents of alleged harassment would be futile, she had other options, as she could have, among other things, requested counsel. Having elected not to follow the policy, she is bound by the consequences. Accordingly, La Rabida is entitled to summary judgment on Ms. Arrington's Title VII sexual harassment claim.

### B.    Hostile Work Environment (Count II)

Ms. Arrington contends that La Rabida sanctioned a racially and sexually hostile workplace based on the following allegations: (1) Charlene Brooks threatened to assault and then did assault Ms. Arrington, and La Rabida only took action after Ms. Arrington filed a police report; (2) Mark Gates told other employees that Ms. Arrington would get them fired, creating "a

very unhappy work place situation" that caused Ms. Arrington to become isolated from her co-workers, Corrected Amended Complaint at ¶¶ 38-39; (3) Carol Usher told other employees to stay away from Ms. Arrington, causing Ms. Arrington to suffer emotional distress; and (4) after Ms. Arrington was placed on part-time status, she was very upset when she heard alleged office gossip to the effect that she would never get the full-time open position.  Ms. Brooks and Mr. Gates are African-American, and Ms. Usher is of African-Belizean descent.

To establish that La Rabida created a hostile work environment based on her sex, Ms. Arrington must show that: (1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was directed at her because of her sex; (3) the conduct had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Similarly, to establish that La Rabida created a hostile work environment based on her race, Ms. Arrington must show that:  (1) she was subjected to unwelcome harassment; (2) that was based on her race, (3) the harassment was severe and pervasive enough to alter the conditions of her environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability.  *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005).

With respect to the fourth prong – a basis for employer liability – the Seventh Circuit has very recently clarified that "[u]nder Title VII, an employer can be vicariously liable for a hostile work environment created by a supervisor, but is only liable for a hostile work environment created by a co-worker if the employer was negligent in discovering or remedying the

harassment." *Andonissamy v. Hewlett-Packard Co.*, Nos. 07-2387 & 07-2390, — F.3d —, 2008

WL 4821742, at *4 (7th Cir. Nov. 7, 2008).  "A 'supervisor' for purposes of Title VII is not

simply a person who possesses authority to oversee the plaintiff's job performance, but a person

with the power to directly affect the terms and conditions of the plaintiff's employment" by

hiring, firing, promoting, demoting, disciplining or transferring the plaintiff.  *Id*.  With these

principles in mind, the court turns to Ms. Arrington's allegations about Mr. Gates, Ms. Brooks,

and Ms. Usher.

### 1.    Mr. Gates

Mr. Gates did not work in Ms. Arrington's department and did not supervise Ms.

Arrington.   After he told other La Rabida employees to leave Ms. Arrington alone because she

gets people fired, La Rabida sent him for counseling.  Moreover, Ms. Arrington has not pointed

to evidence indicating that the counseling did not work, that Mr. Gates continued to try to get

other employees to "shun" Ms. Arrington after he completed the counseling sessions, or that La

Rabida was on notice that his behavior was ongoing.  Thus, while Ms. Arrington may have been

unhappy about the comments made by Mr. Gates, La Rabida did not allow them to go

unchecked.  Hence, the record fails to show that La Rabida was negligent in discovering or

remedying any harassment by Mr. Gates.

Moreover, the "shunning" comments also lack a race or gender component, as Mr. Gates

warned other employees to avoid Ms. Arrington because associating with her could get them

fired if she complained about them.  This comment may have upset Ms. Arrington, but is not

based on her race or sex.  The Seventh Circuit has repeatedly held that "vexing personalities"

and perceived unfairness in the workplace cannot be the basis for a hostile work environment

claim.  *See, e.g, Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d at 863.  That is precisely what

happened here: Ms. Arrington had a personal conflict with Mr. Gates and felt that she was being treated unfairly. This simply does not create a hostile work environment based on race or sex.

### 2. Ms. Brooks

It is unclear if Ms. Arrington is presently arguing that the situation with Ms. Brooks created a hostile work environment. She previously mentioned Ms. Brooks in connection with her hostile work environment claim, but the hostile work environment section of her response to La Rabida's motion for summary judgment focuses exclusively on Ms. Usher and Mr. Gates. In the interests of completeness, however, the court finds that Ms. Brooks' disagreements and eventual fight with Ms. Arrington did not create a hostile work environment.

First, Ms. Brooks had the same job title and responsibilities as Ms. Arrington and thus by definition cannot have been her supervisor. Moreover, La Rabida held a training session to help the supply technicians get along better after it found out about infighting among the supply technicians and then fired Ms. Brooks after she had an altercation with Ms. Arrington. Finally, the tensions and disagreements between Ms. Arrington and Ms. Brooks, both of whom were female African-American supply technicians, appear to have flowed from their contentious personal relationship, as opposed to their shared race or gender. The court thus concludes that La Rabida was not negligent in discovering or remedying the situation with Ms. Brooks.

### 3. Ms. Usher

With respect to Ms. Usher's role in the hostile work environment claim, the court has previously found that Ms. Arrington has not raised a triable issue of fact as to whether Ms. Usher was Ms. Arrington's supervisor and that Ms. Usher was, in fact, *not* Ms. Arrington's supervisor because she did not have the power to hire, fire, promote, demote, discipline, or transfer Ms. Arrington. As such, La Rabida can be liable for Ms. Usher's actions only if it was

negligent in discovering or remedying the alleged harassment.  *See Andonissamy v.*

*Hewlett-Packard Co.*, 2008 WL 4821742, at *4.

Ms. Arrington appears to be asserting that Ms. Usher harassed her based on the fight

about the IV tray, by describing her as incompetent and lazy, by encouraging other employees to

shun her because she could get them fired, and by calling her offensive names when they had an

argument.  With respect to the IV tray, the reader may recall that Ms. Usher used harsh and

abusive language when she allegedly said, "You should have kept your damn hands off of it [the

IV tray].  I don't need you doing anything for me . . . . I'm so sick of you goddamned people,

you all come over here and trying to run things and do things your all kind of way . . . bitch, you

get on [sic] my [expletive deleted] nerve."  The court will not address La Rabida's statute of

limitations argument (because the alleged IV tray incident took place more than 300 days before

Ms. Arrington filed her EEOC charge) because to the extent that the slurs have racial or sexual

overtones, the conversation was immediately reported to a supervisor, and Ms. Usher was

promptly admonished and received a disciplinary report.

Next, the description of Ms. Arrington as "incompetent and lazy" and the so-called

shunning comments are not tied to race or gender, as they are equally applicable to a person of

any race or any gender.  Moreover, no evidence shows that Ms. Arrington placed La Rabida on

notice of Ms. Usher's shunning comments.  Thus, Ms. Usher's criticisms of Ms. Arrington

cannot support a finding of a hostile work environment based on race or gender.

Finally, with respect to the argument that Ms. Usher allegedly called Ms. Arrington

derogatory names, Ms. Arrington has not directed the court's attention to any evidence that she

complained to human resources (the designated recipient of complaints) about this conversation.

She also has not pointed to any evidence that any supervisors at La Rabida knew or should have

known that Ms. Usher, a female of African-Belizean descent, was consistently using racial or gender based slurs towards Ms. Arrington. To the extent that Ms. Arrington contends that supervisors at La Rabida knew or should have known that Ms. Usher was consistently harassing Ms. Arrington based on her race or gender, Ms. Arrington bears the burden of pointing to specifics. The court has carefully reviewed Ms. Arrington's arguments about the alleged hostile work environment. *See* Pltf. Response at 11-13 (discussing her hostile work environment claim). Nothing in Ms. Arrington's brief carries this burden. The court "is under no obligation to search the record for factual matters that might support the denial of a summary judgment motion." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 722 (7th Cir. 2008); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in" the record).

In short, Ms. Arrington has failed to point to evidence showing that La Rabida was on notice that Ms. Usher was engaging in ongoing gender and race-based harassment that created a hostile work environment for other African-American women. Instead, the record shows, at best, that Ms. Usher and Ms. Arrington, like many employees in the special processing department, had personal differences and did not like each other. The court thus recognizes that Ms. Arrington and Ms. Usher did not get along and that Ms. Arrington blames her eventual shift to a part-time position on Ms. Usher's criticisms of her. However, this record is simply not enough to survive a motion for summary judgment on a hostile work environment claim because Ms. Arrington has not identified evidence showing that La Rabida knew or should have known about ongoing behavior based on Ms. Arrington's race or gender or was negligent in discovering or remedying the situation. Accordingly, La Rabida's motion for summary judgment on the hostile work environment claim is granted.

### C.    Retaliation (Count III)

The court next considers Ms. Arrington's claim that after she complained about the assault by Charlene Brooks, the "shunning" comments by Mark Gates and Carol Usher, and the sexual harassment by Mr. Ramsey, La Rabida retaliated against her by reducing her hours, not moving her to a full-time position when one became available, and then terminating her due to pretextual reason (disclosing confidential information). To create a prima facie case of retaliation under the direct method, Ms. Arrington must show that: (1) she was engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *See Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 684 (7th Cir. 2007).[9]

The court acknowledges La Rabida's argument that most of the alleged retaliation is not based on activities protected by Title VII or § 1981. The court will not address this argument, as it finds that Ms. Arrington has failed to point to facts establishing a causal connection between the allegedly protected activity and the subsequent reduction in her hours almost a year later or her eventual termination approximately seventeen months later. First, Ms. Arrington received the same evaluations and wage increased after she reported the breast grabbing incident. Second, her employment status did not change until all the supply technicians were evaluated

---

[9]  The court assumes that Ms. Arrington wishes to proceed under the direct method as she does not address any of the prongs necessary to set forth a prima facie case under the indirect method, which requires her to "establish a prima facie case of discrimination by showing that (1) she engaged in a protected activity, (2) she suffered a materially adverse employment action, (3) she was meeting her employer's legitimate expectations, and (4) she was treated less favorably than similarly-situated employees." *Collins v. Cook County*, No. 06 CV 6651, 2008 WL 4925009, at *8 (N.D. Ill. Nov. 14, 2008). If Ms. Arrington succeeds in establishing a prima facie case, the burden then shifts to La Rabida to identify a legitimate, non-discriminatory reason for Ms. Arrington's termination. If it does so, then the burden returns to Ms. Arrington to show that the proffered reason was pretextual. *Id.*

due to the RIF (which happened approximately two months after she was disciplined for the "butt whooping" comment to Beatrice McIntosh that Ms. Arrington disputed). Nothing – other than speculation – supports an inference that the evaluation was made to set Ms. Arrington up so her hours could be reduced.

Ms. Arrington's attempt to link her poor ranking to Ms. Usher and Mr. Peckham's alleged instructions not to complain to Ms. Ramski and instead to keep any issues inside the department also fails. Department manager Fred Saviano was responsible for the evaluations, and no evidence indicates that Ms. Usher or Mr. Peckham were the true decision-makers or that Mr. Saviano knew about their alleged instructions to keep complaints inside the department. *See generally Brewer v. Bd. Of Trustees of Univ. of Ill.*, 479 F.3d 908, 917 (7th Cir. 2007) (focusing on whether the alleged harasser is influential enough to be the true functional decision-maker).

Moreover, Ms. Arrington's attempt to link Mr. Saviano's low ranking to Ms. Usher and Mr. Peckham's instructions not to complain to Ms. Ramski suffers from a fatal flaw. Ms. Arrington did *not* ignore Ms. Usher and Mr. Peckham's instructions to keep any disputes inside the department, as it is undisputed that other than the breast grabbing complaint (which occurred before the alleged warning to keep disputes inside the department), she never filed another complaint with the human resources department. Thus, Ms. Arrington did exactly what Ms. Usher and Mr. Peckham allegedly told her to do. Putting aside the fact that no evidence shows that Mr. Saviano knew Ms. Usher and Mr. Peckham's alleged instructions, it is illogical to conclude that Ms. Usher and Mr. Peckham retaliated against Ms. Arrington after she did precisely what they told her to do.

This brings the court to the focus of Ms. Arrington's brief regarding retaliation: that her termination was based on a pretextual reason. Pretext is relevant when proceeding under the

indirect method after a plaintiff has established a prima facie case of retaliation. *See, e.g.,*
*Collins v. Cook County*, 2008 WL 4925009, at *8. Ms. Arrington has not attempted to establish
a prima facie case of retaliation, and cannot survive summary judgment when she has elected to
proceed under the direct method by jumping to the last step in the analysis under the indirect
method.

In any event, her arguments about pretext fail on the merits. The reader may recall that
Ms. Arrington was terminated after La Rabida investigated some hospital gossip to the effect
that La Rabida would not move Ms. Arrington from part-time to full-time because she was
incompetent and lazy. Ms. Arrington found out about the gossip from Delois Wooten, who told
her that Monet Wafer overheard Ms. Usher saying it to an unspecified person. Ms. Arrington
confronted Ms. Usher, who confronted Ms. Wafer, who complained to Human Resources that
Ms. Arrington was attributing false statements to her.

Ms. Ramski investigated Ms. Wafer's complaint and admonished Ms. Arrington that the
complaint and investigation should not be discussed with anyone else. Ms. Wooten then told
Ms. Ramski that Ms. Arrington had told her about the Wafer investigation. Ms. Arrington
disputes the truth of Ms. Wooten's report to human resources, but does not deny that Ms.
Wooten told human resources that Ms. Arrington had approached her and told her about the
Wafer investigation. La Rabida investigated and concluded that Ms. Wooten's report was
credible and that Ms. Arrington had compromised the confidentiality of the investigation. It thus
terminated Ms. Arrington for violating hospital directions and compromising the confidentiality
of La Rabida's investigation.

The court cannot fairly summarize Ms. Arrington's argument regarding this chain of events, and thus reproduces it in full:

> The "compromise an internal investigation" theory for plaintiff's discharge does not bear scrutiny. Plaintiff denied telling Wooten that she had told HR that Wooten was her source as to what Usher had told Wafer. Wooten only states that plaintiff told her that "she was going up to Nancy" (Dft Ex G, dep. at 30). The fantastic scenario cannot support LaRabida's decision. Usher pops off that plaintiff will never get full time employment because she's lazy. Monet Wafer overhears it and tells Wooten. Wooten tells plaintiff who confronts Usher who denies it. Usher confronts Wafer who runs away crying. HR then hales plaintiff to a meeting with Ramski and Usher and told not to tell anyone. If there's an investigation into Usher's running her mouth, [footnote 11/"[LaRabida] always tell you it's confidential, but the whole hospital know." (Pltf 56 ¶ 39.)] why is she present at an interview?

Pltf. Response at 14.

This argument, besides being remarkably difficult to follow, misses the mark. There was no investigation into "Usher running her mouth." The investigation was about a complaint submitted by Ms. Wafer. Ms. Arrington disputes the truth of what Ms. Wooten told human resources, but does not deny that Ms. Wooten told human resources that Ms. Arrington had approached her and told her about the Wafer investigation. The court agrees with La Rabida's succinct summary of events: "[Ms. Arrington] was told not to tell anyone about an HR investigation; HR was informed that she had told someone; HR checked that report and found it to be corroborated." Dft. Reply at 12.

Regardless of how fervently Ms. Arrington disagrees with La Rabida's acceptance of a view opposing her own, only the most blatant speculation supports Ms. Arrington's contention that La Rabida did not honestly believe Ms. Arrington had compromised the confidentiality of the Wafer investigation. Instead, the record shows that only two conclusions are supported by the evidence: either La Rabida correctly believed that Ms. Arrington comprised the

confidentiality of the investigation or it made an honest mistake in believing she had done so. Either way, even if pretext was properly before the court, La Rabida is entitled to summary judgment. *See Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006) ("A pretext, to repeat, is a deliberate falsehood . . . . An honest mistake, however dumb, is not, and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage").[10]

### D. State Law Claims

Although it has dismissed all of Ms. Arrington's federal claims, the court elects to exercise supplemental jurisdiction over her related state law claims for defamation and intentional infliction of emotional distress given this case's procedural posture and the straightforward nature of these claims. *See* 28 U.S.C. § 1367(c).[11]  In Count IV, Ms. Arrington contends that La Rabida is liable for libel and slander per quod based on the "shunning" comments by Carol Usher and Mark Gates.  In Count V, she asserts that La Rabida is liable for intentional infliction of emotional distress because the conduct of Ms. Usher, Mr. Ramsey, Ms. Brooks, and Mr. Gates' actions caused her to suffer extreme emotional distress.

La Rabida correctly contends that it can only be vicariously liable for the actions of its employees if those actions were taken within the scope of their employment. *See Bagent v.*

---

[10]  The court also notes that Ms. Arrington cannot survive summary judgment under the direct method because she cannot point to a causal link between a statutorily protected activity and her termination given that the record shows that La Rabida either correctly believed that Ms. Arrington comprised the confidentiality of the investigation or made an honest mistake in believing she had done so.

[11]  In Count VI, Ms. Arrington contends that La Rabida is liable for fraudulent misrepresentation under Illinois law because Carol Usher and Mark Gates were supervisors and made false statements about Ms. Arrington (the "shunning" comments) to make her so unhappy at work that she would resign. At page 16 of her response, Ms. Arrington concedes that this count cannot be sustained.  Accordingly, it is dismissed with prejudice.

*Blessing Care Corp.*, 224 Ill.2d 154, 163-64 (Ill. 2007). The Illinois Supreme Court has held that "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." *Id*. at 164, *quoting* (Restatement (Second) of Agency § 228 (1958). Moreover, the "[p]laintiff has the burden of showing the contemporaneous relationship between the tortious act and the scope of employment." *Id*.

Here, Ms. Arrington has failed to carry her burden of showing that all of the alleged acts underlying her intentional infliction of emotional distress claim were within the scope of employment as the evidence simply fails to show that the statements or actions at issue were sanctioned by La Rabida or were actuated, at least in part, by a purpose to serve La Rabida. Instead, at best, the summary judgment filings in this case demonstrate that La Rabida's special processing department was a hotbed of ongoing conflict, and that La Rabida diligently attempted to investigate and discipline all of the employees who created problems and then terminated employees as necessary.

Ms. Brooks was fired after Ms. Arrington complained about her. Mr. Ramsey received oral and written warnings and was told that his alleged behavior violated La Rabida's policies and that he could be fired if someone complained about him again. Mr. Gates was sent to counseling after he made negative remarks about Ms. Arrington. Ms. Usher was disciplined after the IV tray incident, and no evidence shows that La Rabida condoned any of the negative comments allegedly made by Ms. Usher or that supervisory personnel were even aware of the comments. Moreover, La Rabida made efforts to foster a more collegial workplace by holding training sessions on communication and establishing and maintaining an open door policy to

allow employees to voice concerns about conduct in the workplace that made them feel uncomfortable.

This evidence simply does not show that the allegedly wrongful acts were taken within the scope of the respective employees' scope of employment. The record also does not show that La Rabida instructed its employees to take the actions underlying Ms. Arrington's state law claims or condoned those actions. Similarly, it does not show that the actions at issue were done to serve La Rabida. Thus, La Rabida is not vicariously liable for the actions of Ms. Usher, Mr. Ramsey, Ms. Brooks, and Mr. Gates and its motion for summary judgment as to Ms. Arrington's state law claims for defamation and intentional infliction of emotional distress is granted.

## III.    Conclusion

Count VI (fraudulent misrepresentation) is dismissed with prejudice as Ms. Arrington concedes that this count cannot be sustained. For the above reasons, La Rabida's motion for summary judgment [#111] is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.


DATE:   December 22, 2008                     _Blanche M. Manning_____
                                              Blanche M. Manning
                                              United States District Judge